**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FORT SMITH DIVISION**

MICHAEL REED                                                          PLAINTIFF

v.                                      Case No. 2:11-CV-02135

MALONE'S MECHANICAL, INC.                    DEFENDANT / THIRD-PARTY PLAINTIFF

v.

GILBERT PROJECT SERVICES, INC.                       THIRD-PARTY DEFENDANT

## <u>ORDER</u>

Currently pending before the Court is Plaintiff Michael Reed's Motion for New Trial (Doc. 64) and brief in support (Doc. 65) and Defendant Malone's Mechanical Inc.'s ("Malone's") Response (Doc. 68). For the reasons set forth below, the Court finds that Plaintiff's Motion should be DENIED as to all issues raised.

## I.      Standard of Review

"The court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . ." Fed. R. Civ. P. 59(a)(1)(A). "Under Rule 59, the decision to grant a new trial lies within the sound discretion of the trial court." *Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 471 (8th Cir. 2011). "The key question in determining whether a new trial is warranted is whether it is necessary to prevent a miscarriage of justice." *Id.* The Court will address each of the grounds raised by Plaintiff as warranting a new trial in turn.

## II.     Discussion

### A.      Failure to Give Instruction Pursuant to 29 C.F.R. § 1926.451

The Court "has wide discretion in formulating instructions for the jury." *Hose v. Chicago Northwestern Transp. Co.*, 70 F.3d 968, 977 (8th Cir. 1995) (internal quotation omitted). In reviewing jury instructions, the Court must consider "whether the instructions, when taken as a whole and viewed in light of the evidence and applicable law, fairly and adequately present the issues in the case to the jury." *Id.* (internal quotation omitted). The primary issue presented by the evidence in this case was whether Malone's was negligent when its employees were working from a scissor lift and a pipe saddle fell from a pipe outside the scissor lift and hit Mr. Reed, who was working below.

Plaintiff argues that the Court erred in declining to give an instruction, proffered by Plaintiff, on OSHA regulation 29 C.F.R. § 1926.451, regarding safety measures to be taken when "there is a danger of tools, materials, or equipment falling from a scaffold and striking employees below." In its Motion for New Trial, Plaintiff's counsel represents that "[t]he Court declined to give the instruction, apparently believing that a scissor lift was not a scaffold." (Doc. 65, p. 2). The Motion further draws the Court's attention to Exhibits B and C, "OSHA interpretations indicating OSHA's interpretation that a scissor lift is a 'scaffold' for purposes of the OSHA regulations before the Court." *Id.* at p. 3. The representations contained in Plaintiff's Motion are completely at odds with the Court's actual findings regarding instructing the jury on OSHA regulations. The Court discussed, at length, its reasoning regarding instructing the jury on particular OSHA regulations, as reflected in the transcript[1]:

---

[1] The record reflects that no transcript was ordered prior to the filing of Plaintiff's Motion for New Trial. Any representations made in Plaintiff's Motion, therefore, appear to be made based on the memory of Plaintiff's counsel.

Let me go first to the, to the regulation about the duty to have fall protection. And you all have discussed with me throughout the trial in some of these side bar conferences about different regulations and so forth. The regulation that we are using for fall protection . . . what I call the general regulations regarding fall protection – there are also some specific regulations involving scaffolding, and under scaffolding there are . . . some additional regulations that apply to mobile scaffolds, which I will discuss in a moment.

**We did not use the regulation under general scaffolding simply because it doesn't seem like it applies because it really applies to employees on the scaffold and their protection and, number two, objects that are falling from the scaffold itself.** There is – there are some additional provisions under what's called mobile scaffolds.

**One thing that we found** – and I know, Mr. Emerson . . . you have referred to the regulation involving aerial lifts. **There is a letter from the Administrator of OSHA . . . in response to a question in particular about scissor lifts. And here's what it says about scissor lifts.** I mean, the question that was presented here was what OSHA standards – **and it says aerial lift standards or the mobile scaffold standards – apply to standard vertical man lifts such as scissor lifts or "Genie lifts"?[2]** . . . And what it says here, because scissor lifts do not fall within any of these categories,[3] scissor lifts are not addressed by the aerial lift provisions of subpart L. There are no OSHA provisions that specifically address scissor lifts, **but since scissor lifts do meet the definition of a scaffold under 1926.451, employers must comply with the other applicable provisions of subpart L when using scissor lifts.**

Since scissor lifts are mobile, the specific requirements for mobile scaffolds and the scaffold standard must be met. But when you go to look at the specific additional

---

[2] The OSHA publication quoted by the Court is available at OSHA's website (presumably the same website used by Plaintiff in retrieving exhibits B and C) at the following address: http://www.osha.gov/pls/oshaweb/owadisp.show_document?p_table=INTERPRETATIONS&p_id=24191 (last visited December 10, 2012) and is also attached to this Order as Exhibit A for ease of reference.

[3] In making this remark, the Court was again quoting from the OSHA publication. The "categories" referenced in the OSHA publication are the categories incorporated by reference into the regulation for aerial lift requirements from the American National Standards Institute (ANSI), which includes "certain vehicle-mounted elevating and rotating work platforms, namely 'extensible boom platforms,' 'aerial ladders,' 'articulating boom platforms,' vertical towers,' and 'a combination of any of the above.'" (Ex. A to this Order).

protections under subpart F for mobile scaffolds, there's nothing about fall protection in there at all.

So for that reason, we made the decision to use the general regulation in regard to the duty to have fall protection.  And even there there are some questions about its application to the facts of this case . . .

(Doc. 67, pp. **5-7**) (emphasis added).

As evidenced by the Court's statements, and contrary to the representations contained in Plaintiff's Motion, the Court was well aware that scaffolding regulations apply to scissor lifts.  In fact, it was the Court that first researched OSHA interpretations regarding which regulations apply to scissor lifts and presented those findings to counsel for the parties.  The Court engaged in such research after hearing argument back and forth during sidebars about which regulations might apply in this case, and after viewing the proposed instructions given to the Court by the parties.  Despite the fact that this case has a lengthy history of litigation and motion practice, at no time prior to the instant Motion for a New Trial did counsel for the parties direct the Court's attention to, cite to, or base any arguments on OSHA interpretations of fall-protection regulations in regard to scissor lifts.  Rather, it was the Court that conducted that research in an effort to correctly instruct the jury, and it was the Court that brought the OSHA interpretations to the attention of counsel.  Therefore, the Court finds nothing in Plaintiff's Exhibits B and C to indicate that the Court's previous ruling, based on OSHA interpretations, was incorrect.

The Court notes further that the OSHA interpretations attached as exhibits to Plaintiff's Motion serve to bolster the Court's decision not to instruct the jury on the regulation regarding fall protection under the general scaffolding regulation.  Both question 1 and question 2 in Exhibit B relate to requirements for safely stacking material *on a scissor lift*.  (Doc. 64-2).  In response to

question 2, OSHA states that "[p]rovisions in Subpart L include requirements for barricades or other physical means to protect employees from objects *that may fall off scaffolds*. Section 1926.451(h), *Falling object protection*, provides . . ." (Doc. 64-2, p. 2) (first emphasis added, second emphasis in original). Therefore, OSHA states, both in the language of the regulation itself and in its interpretation of the regulation, that 29 C.F.R. § 1926.451 is meant to protect employees from objects falling *off a scaffold.*

To summarize the Court's findings regarding which regulations should be included in the instructions given to the jury, the Court considered four OSHA regulations to determine what regulations regarding falling-object protection might apply in this case: 29 C.F.R. § 1926.501(c) (general duty to provide protection from falling objects), 29 C.F.R. § 1926.451(h) (general falling object protection for scaffolds), 29 C.F.R. § 1926.453 (regulation specific to aerial lifts), and 29 C.F.R. § 1926.452(w) (regulation specific to mobile scaffolds). The first three regulations were all, at some point, argued by one or both parties to be potentially applicable in this case. Based on a review of OSHA interpretations, including but not limited to the interpretation attached as Exhibit A to this Order, the Court first eliminated the aerial lift regulation as being inapplicable in this case, as OSHA has stated that scissor lifts are not aerial lifts, but must instead conform to scaffolding regulations. Since scissor lifts are mobile, they must also conform to the mobile scaffold regulation. (Ex. A). However, the Court reviewed the mobile scaffold regulation and saw nothing specifically regarding falling-object protection or any language which would be otherwise applicable to the case at hand based on the parties' presentation of the case. The Court, therefore, eliminated the mobile scaffolding regulation as inapplicable to this case.

The Court next considered the regulation regarding falling-object protection for scaffolds, 29 C.F.R. § 1926.451(h).  That regulation provides, in relevant part:

> (h) Falling object protection.
>
> (1) In addition to wearing hardhats, each employee *on a scaffold* shall be provided with additional protection from falling [objects] . . .
>
> (2) Where there is a danger of tools, materials, or equipment falling *from a scaffold* and striking employees below, the following provisions apply . . .

Based on the language of the regulation itself, the Court eliminated the scaffold regulation for falling object protection as inapplicable in this case, finding that the regulation "applies to employees on the scaffold and their protection and, number two, objects that are falling from the scaffold itself." (Doc. 67, pp. 5-6).  In this case, it was not argued by any party, and therefore was not in dispute, that any object fell onto an employee on the scissor lift or fell from the scissor lift onto Mr. Reed. Rather, an object outside the scissor lift — a pipe saddle on which a Malone's employee was working — fell and hit Mr. Reed, who was working below.  By process of elimination, the Court found that the only regulation regarding protection from falling objects which might be applicable in this case was 29 C.F.R. § 1926.501 — the general regulation regarding the duty to provide protection from falling objects.

Therefore, contrary to the representation made in Plaintiff's Motion, the Court did not have any belief — apparent or otherwise — that a scissor lift was not a scaffold for purposes of applying OSHA regulations.  Rather, the Court found that, although a scissor lift must conform to the applicable scaffolding regulations, the scaffolding regulation for falling-object protection was inapplicable given the facts of this case, based on a straightforward interpretation of the language of the statute.

As noted above, counsel for the parties at no time presented the Court with OSHA interpretations regarding the applicability of scaffolding regulations to scissor lifts in order to support their respective positions as to what regulations should be included in the jury instructions.  It does not appear that, prior to being prompted by the Court, counsel for Plaintiff researched such OSHA interpretations, even though the requested regulation was "extremely material to the theory of the case offered by Plaintiff."  (Doc. 65, p.3).  The Court notes that, had counsel for Plaintiff desired, given the fact that the accident at issue in this case took place in 2006, counsel could have inquired of OSHA directly as to what regulations should be applied to the facts of the case and how they should be applied.  Exhibit B to Plaintiff's Motion is an OSHA interpretation that was prompted by an attorney inquiry dated October 1, 2004.  OSHA issued its interpretation just three months later — on January 19, 2005.  It does not appear, however, that counsel for Plaintiff either asked OSHA for clarification or otherwise researched OSHA interpretations prior to, or during, trial.  It is disingenuous, now, for counsel to present the Court with OSHA regulations, as a basis for a new trial, representing that the Court was uninformed or misinformed, when counsel had not previously presented the Court with such interpretations but the Court had nevertheless researched such interpretations and presented them to counsel.

The Court finds that the instruction on OSHA regulations which was given to the jury, when viewed in light of the evidence presented at trial and applicable law, fairly and adequately presented the issues in the case to the jury.

**B.**      **Failure to Instruct on Applicability of OSHA Regulations to Multi-Employer Worksite**

Plaintiff argues that the Court should have instructed the jury that "[i]n a worksite where more than one employer is present, the OSHA Regulations that I have instructed you about created a specific duty of compliance by all employers for the good of all employees on the worksite." (Doc. 64-4). Plaintiff argues that such instruction would be in line with applicable law as set forth in *Solis v. Summit Contractors, Inc.*, 558 F.3d 815 (8th Cir. 2009).[4]

Originally, the Court had planned to add a paragraph, similar to Plaintiff's proffered instruction, appended to the instruction regarding applicable OSHA regulations. The additional paragraph read, "[w]hen more than one employer is involved at a particular worksite, more than one employer may be responsible for complying with the above regulation for the safety of all employees present at the work site." (Doc. 67, p. 7). Although similar to Plaintiff's proffered instruction, the paragraph offered by the Court for consideration was materially different in one key regard. The Court could not give an instruction, as proffered by Plaintiff, stating that *all employers* have a specific duty of compliance for the good of *all employees* on a worksite. Such an instruction would not have been in line with either *Solis* or the OSHA Multi-Employer Citation Policy ("the Multi-Employer Policy"). Rather, *certain* employers have a duty to comply with OSHA regulations for the good of *certain* employees on a worksite; specifically, the creating employer, the exposing employer, the correcting employer, and the  controlling employer have a duty, according to the Multi-Employer Policy, to certain employees in certain circumstances. (Doc. 64-5); *see also Solis*, 558 F.3d 815 (finding that the plain language of § 1910.12(a) did not preclude the Secretary's controlling employer citation policy).

---

[4] Although Plaintiff's Motion represents that the proffered instruction was a "direct quote" (Doc. 65, p. 4) from the *Solis* opinion, the Court could not find identical language in the *Solis* opinion.

While, as cited by Plaintiff, the *Solis* opinion does state that 29 U.S.C. § 654(a)(2) "creates a specific duty to comply with standards for the good of all employees on a multi-employer worksite," *Solis*, 558 F.3d at 818, that statement must be read in the context of the entire opinion. To infer from that statement that *all employers* are responsible for complying with any OSHA regulation for the good of all employees at a multi-employer worksite construes the *Solis* holding far too broadly.   The *Solis* Court merely upheld the Secretary of Labor's application of the controlling employer citation policy contained in the Multi-Employer Policy, finding that such application was not precluded by the provisions of 29 U.S.C. § 654.  Neither the *Solis* Court nor the Multi-Employer Policy go so far as to say that all employers are responsible to all employees in every situation.  Such an interpretation would essentially obviate the need to have the Multi-Employer Policy or the *Solis* decision in the first place, as there would be no need to ascertain—at length and in detail—whether an employer is a creating, exposing, correcting, or controlling employer in any given situation if it could simply be said that *all* employers are responsible for compliance.  The Court persists in its finding, therefore, that Plaintiff's proffered instruction was an oversimplification of the law applicable to this case.

The Court notes that it is also not clear that Plaintiff's theory of the case was that Malone's should be held responsible as a controlling employer.  In the event that Plaintiff wished to argue that Malone's should be held responsible under one of the other provisions of the Multi-Employer Policy, the Court was presented with no case law upholding those other provisions outside the fairly narrow holding of the *Solis* case, given the facts of this particular case.

While the Court originally considered including the paragraph stating that more than one employer may be responsible at a worksite, the Court decided after further consideration of *Solis*

opinion that such a statement was also an oversimplification, as it did not adequately clarify *which* employers might be responsible given the facts of this case. Plaintiff's counsel suggested giving the jury the Multi-Employer Policy. The Court declined that suggestion. The Policy is six pages long and would have been unduly confusing. Furthermore, the Policy is not law.[5] Rather, the Court instructed the jury on the applicable law set forth by 29 U.S.C. § 654, as summarized by the Court:

(a)     *Each employer* shall comply with OSHA standards.[6]
(b)     Each employee shall comply with OSHA standards which are applicable to his own actions and conduct.

(emphasis added).

Plaintiff argues that, as a result of his proffered instruction not being given, the jury was required to find that the OSHA regulations which refer to "employer" were only for the benefit of employees of such employer. (Doc. 65, p. 4). Plaintiff's counsel requested that an instruction regarding OSHA regulations be given.[7] The Court instructed as to the OSHA statute and the OSHA regulations that it found to potentially be applicable in this case. The jury was not required to make any finding based on the wording of that instruction. Rather, the jury was informed as to what the existing law was and could draw their own conclusions as to whether any duty was owed or violated under that law given the facts of this case. As to the regulations, the Court included the regulations

---

[5] Arkansas Model Jury Instruction 601 allows the Court to instruct on violations of a statute, ordinance, or regulation as evidence of negligence—not violations of a policy statement.

[6] This is the relevant component of the statute interpreted by the *Solis* Court to create a specific duty to comply with standards for the good of all employees on a multi-employer worksite. 558 F.3d at 818.

[7] Malone's also originally included certain OSHA regulations in its proffered instructions, but later took the position that no instruction should be given on OSHA regulations. (Doc. 67, pp. 12-13, 16).

as they were worded and without edits or amendments.  If Plaintiff or his counsel thought that any

OSHA regulation, as worded, was unduly confusing to the jury, they were under no obligation to

request that such an instruction be given.  The Court declines, however, to include any instruction

to the jury that is an oversimplification or an overly broad representation of existing law.  To do so

would be to mislead the jury.

As stated above, the Court finds that the instruction on OSHA regulations that was given to

the jury, when viewed in light of the evidence presented at trial and applicable law, fairly and

adequately presented the issues in the case to the jury.

### C.    Court's Comment on the Evidence

"The trial court has broad discretion in commenting on evidence."  *United States v. White*,

671 F.2d 1126, 1130 (8th Cir. 1982).  "The court has responsibility for directing the jury in matters

of law, and may comment on the evidence to give appropriate assistance to the jury, so long as it

does so fairly and impartially."  *Id*. (internal citation omitted).  The Court has a duty to ensure that

the evidence in a case is clear and understood.  *Ray v. United States*, 367 F.2d 258, 262 (8th Cir.

1966).  However, any comments made by the Court should not "*unfairly* emphasize testimony nor

add to or change the evidence given."  *Id*.  (emphasis added).

"There can be no doubt that a federal judge . . . is more than a mere moderator and may assist

the jury in arriving at a just conclusion by explaining and commenting upon the evidence and by

expressing his opinion upon the facts, provided he clearly states to the jury that all matters of fact

are submitted to their determination."  *Franano v. United States*, 310 F.2d 533, 537 (8th Cir. 1962).

The Court recognizes, however, that "a trial judge should exercise care and discretion in expressing

an opinion so as to not mislead or, in effect, to destroy the jury's right as the sole arbiters of all fact

questions." *Id*.  A trial judge should not, in making any comment, become clearly argumentative or assume the role of an advocate.  *Id.*  "A charge must be viewed in its entirety in determining whether a jury would have been misled or unduly influenced by the portions to which objection has been made."  *Id.*

The Court included the general regulation regarding protection from falling objects because, as a general regulation applicable to any construction site "when an employee is exposed to falling objects," it was applicable to the worksite in this case.  29 C.F.R. § 1926.501(c); Doc. 67, p. 11.  The Court had some doubts, however, about its applicability to the particular facts of this case.

Malone's asked that no instruction regarding OSHA regulations on falling-object protection be given.  (Doc. 66, p. 10).  The Court gave Plaintiff the option of either (1) not instructing as to 29 C.F.R. § 1926.501(c), or (2) having the Court instruct the jury as to 29 C.F.R. § 1926.501(c) with the understanding that the Court would make a comment as to that regulation being included.  Plaintiff's counsel objected to the Court making any comment, but requested that 29 C.F.R. § 1926.501(c) be included in the instructions given to the jury.  The Court allowed Plaintiff's counsel to make a record of his objection.

The Court instructed as to 29 C.F.R. § 1926.501(c) by giving the regulation in full:

Protection from falling objects. When an employee is exposed to falling objects, the employer shall have each employee wear a hard hat and shall implement one of the following measures:

(1)     Erect toeboards, screens, or guardrail systems to prevent objects from falling from higher levels; or,

(2)     Erect a canopy structure and keep potential fall objects far enough from the edge of the higher level so that those objects would not go over the edge if they were accidentally displaced; or,

(3)     Barricade the area to which objects could fall, prohibit employees from entering the barricaded area, and keep objects that may fall far enough away from the edge of a higher level so that those objects would not go over the edge if they were accidentally displaced.[8]

After instructing as to 29 C.F.R. § 1926.501(c), the Court commented as follows:

Now, at this time I'm going to deviate from the instructions and make a comment. In federal court, judges are permitted to comment on the evidence. At this time, I will comment on the evidence as it relates to this instruction. This instruction was requested by the Plaintiff. The Court has questions as to whether the evidence in this case applies to the Code of Federal Regulation on the duty to have fall protection. This is because the regulation does not define the location of the falling object. A reading of the regulation would seem to apply to objects on the top of the higher level such as a platform, and that precaution be taken to make certain the object does not fall off the edge of the higher platform. Again, a violation of a regulation is not necessarily negligence, but evidence of negligence that can be considered by you along with other facts and circumstances of the case.

Plaintiff argues that the Court's comment precluded a fair evaluation of the evidence by the

jury. Plaintiff argues that "the comment left the distinct impression that OSHA had absolutely no

regulation which regulated working above other workers on a scissor lift when objects can be

---

[8] Plaintiff also proffered an instruction with an edited version of 29 C.F.R. § 1926.501(c), which read as follows:

Protection from falling objects. When an employee is exposed to falling objects, the employer shall have each employee wear a hard hat and shall implement one of the following measures:

Erect a canopy structure or barricade the area to which objects could fall and prohibit employees from entering the barricaded area.

The Court, however, thought that editing the regulation in such a way would have been misleading to the jury as it takes the portions which are most beneficial to Plaintiff out of the context of the regulation as a whole. The Court believes that Plaintiff's proffered edits to subsection (3) would have been particularly misleading to the jury in that they include a deletion of the ultimate conjunctive requirement included in that subsection, which is the portion that would indicate that the regulation does not apply to the incident at issue in this case. The Court believed it most fair to give the complete regulation, without edits, to the jury for consideration.

dropped on those working below." (Doc. 65, p. 5). Plaintiff also objects to the fact that the Court told the jury that the instruction was requested by Plaintiff, arguing that such comment led to an inference that Plaintiff did something wrong in requesting an instruction on an inapplicable regulation and also misled the jury because Malone's requested a similar instruction.

First, the Court does not believe that its comment precluded a fair evaluation of the evidence. In fact, the Court's intent in commenting was to *promote* a fair evaluation of the evidence. While the Court agreed to give an instruction on a regulation, which was applicable to the worksite in this case, the Court did not want to leave the jury with an incorrect impression that—merely because the regulation was included in the instruction—the Court was also instructing that the regulation undoubtedly applied to the particular facts of this case. The Court did not say that the regulation did *not* apply. Rather, the Court let the jury know that it questioned the relevance of one of the regulations relied on by Plaintiff. *See White*, 671 F.2d at 1130 (finding trial court did not err by commenting on the relevance of cases relied on by defendants); *see also Franano v. United States*, 310 F.2d 533, 537 (8th Cir. 1962) (a federal judge may assist the jury by expressing his opinion upon the facts). The Court also drew the jury's attention to language in the regulation that the Court found important for the jury to consider and very briefly analyzed such language. *See Quercia v. United States*, 289 U.S. 466, 469 (1933) (stating that it is within the trial judge's province to draw the jury's attention to parts of evidence the Court thinks important, and that a trial judge "may analyze and dissect the evidence, but he may not either distort or add to it"). The jury was left to make its own decision, based on the evidence and arguments presented, as to whether the regulation applied and, if so, whether it was violated.

It is the Court's view that its comment was a "fair, dispassionate and judicial" comment that did not exceed the bounds of fair comment or constitute prejudicial error. *See United States v. De Pugh*, 434 F.2d 548, 555 (8th Cir. 1970) (finding trial judge comment stating to the jury that "I think it would be a fair finding that the government proved beyond a reasonable doubt" that a criminal defendant acted willfully as not beyond the bounds of propriety); *see also United States v. Neumann*, 887 F.2d 880 (8th Cir. 1989) (en banc) (finding no plain error where trial judge commented that it seemed to him that the elements of the crime of bank robbery were satisfied "if [the defendant] is the man who did it"), *White*, 671 F.2d 1126 (finding no error in trial court commenting on the relevance of cases relied on by defendants), *United States v. Eagan*, 516 F.2d 1392 (8th Cir. 1975) (finding no plain error where trial judge commented that "if the jury believed all of the Government's witnesses, the Government has established every element of the crime charged"), *Gant v. United States*, 506 F.2d 518, 520 (8th Cir. 1974) (finding no reversible error where trial judge commented that only one essential element of a crime was in dispute and also made certain comments as to the remaining element), *United States v. Cole*, 453 F.2d 902 (8th Cir. 1972) (finding no prejudicial error where trial judge summarized the evidence, allowing interjections by the Assistant U.S. Attorney), *Franano*, 310 F.2d 533 (finding no reversible error where trial judge's comments included comments on the credibility of government and defense witnesses, pointing out that the testimony of the two defense witnesses was contradictory); *but see Quercia*, 289 U.S. 466 (finding error in criminal case where trial judge's comments included "I think that every single word that man said, except when he agreed with the Government's testimony, was a lie"), *United States v. Brandom*, 479 F.2d 830 (8th Cir. 1973) (in a split opinion, finding reversible error where the trial

judge's comment "made it clear to the jury that, in the trial judge's opinion, the government had produced proof beyond a reasonable doubt of two of the three essential elements of the offense").

The Court also clearly instructed the jury that "[n]either in these instructions nor in any ruling, action or remark that I have made during the course of this trial have I intended to give any opinion or suggestion as to what your verdict should be . . . What the verdict shall be is the sole and exclusive duty and responsibility of the jury."[9]  While such a statement will not cure otherwise prejudicial error, *Quercia*, 289 U.S. at 472, such instruction adds context to the Court's comment and "makes clear to the jury that all matters of fact are submitted to their determination."  *See, e.g.*, *Gant v. United States*, 506 F.2d 518, 520 (8th Cir. 1974) (stating that a trial judge may fairly and impartially comment on the evidence or express an opinion on facts "so long as he makes it clear to the jury that all matters of fact are submitted to their determination").

The Court does not agree with Plaintiff's statement that the Court's comment "left the distinct impression that OSHA had absolutely no regulation which regulated working above other workers on a scissor lift when objects can be dropped on those working below."  (Doc. 65, p. 5).  The jury was instructed on the falling-object regulation which the Court found to be most applicable to the facts of this case.  The jury was, therefore, made aware that OSHA had a general regulation regarding when someone may be exposed to falling objects.  As stated by the Court above, OSHA also has regulations relating to falling-object protection when working on a scaffold.  The Court does not dispute that these OSHA regulations exist.  The Court simply found that those regulations do not apply to the facts of this case.  It may very well be the case that OSHA has no specific regulations

---

[9] The Court cannot cite to the record, as the transcript of this portion of the proceedings has not been ordered.

which would assign fault to an employee working in a scissor lift who accidentally drops a pipe saddle located outside of the scissor lift onto a person working below.  Simply because Plaintiff would like a regulation that better supports his case to exist does not mean that the Court will instruct as to any regulation requested by Plaintiff, edited in the manner that Plaintiff prefers.  By instructing as to 29 C.F.R. § 1926.501, the Court informed the jury that OSHA regulations regarding falling-object protection, which were discussed at length during the trial, did exist.  By commenting, the Court let the jury know that the given instruction did not necessarily set forth a regulation that was undoubtedly applicable to any employer in this case.

Second, the Court finds that including the statement that the instruction was requested by Plaintiff did not cause the comment to cross a line into unfairness, partiality, or advocacy on behalf of either party.  The Court's statement that Plaintiff requested the instruction, when viewed in the context of the numerous pages of final instructions given to the jury, did not mislead or unduly influence the jury. If such a statement "would so influence a jury, then the intelligence and independence of a jury no longer deserves our confidence." *Ray*, 367 F.2d at 262.

The Court notes that it has the discretion to comment on evidence during a trial, and so might have commented on the applicability of the fall-protection regulation during Plaintiff's presentation of evidence.  Certainly, had the Court chosen to comment during the trial, the jury would have been made aware that the Court was not convinced of the applicability of the regulation advanced by Plaintiff, and that it was Plaintiff and his counsel arguing the applicability of such regulation. Indeed, given the fact that Plaintiff presented evidence and argument throughout the trial regarding the applicability of and compliance with OSHA regulations, the Court cannot assume that the jury was, at the time the final instructions were given, ignorant of Plaintiff's theory of the case.  The

Court, therefore, does not agree that the Court's comment led to an inference that Plaintiff did something wrong by asking for an instruction that was in line with their theory of the case, which had been fully argued to the jury.

The Court also finds that the statement that Plaintiff requested the instruction was not misleading to the jury, as argued by Plaintiff. Although Malone's may have originally submitted a similar instruction, it later took the position that no instruction on OSHA fall protection standards should be given, leaving only Plaintiff requesting an instruction on OSHA regulations. (Doc. 66, pp. 10-11).

### D.     Evidence Regarding the Practices of Other Contractors at the Job Site

Plaintiff argues that the Court erred in denying his oral motion in limine[10] to exclude evidence regarding the practices of other contractors at the Simmons Foods, Inc. ("Simmons Foods") worksite. Plaintiff characterizes such evidence as "evidence of other acts of negligence alleged to have been the fault of Andy Gilbert" (Doc. 65, p. 6) and argues that such evidence should have been precluded pursuant to Federal Rule of Evidence 404(b).

It appears that Plaintiff is arguing that, in considering whether Third-Party Defendant Gilbert Project Services, Inc. ("Gilbert") was negligent in causing injury to Mr. Reed, the jury should not have been allowed to consider evidence of prior wrong acts (i.e., allowing other contractors to work over other employees) in order to show that Gilbert acted in accordance in causing injury to Mr.

---

[10] Since Plaintiff did not order a transcript in this case, he did not refer the Court to the portion of the transcript where his oral motion was made or ruled on. The Court asked the court reporter to conduct a brief review of the voluminous pages of proceedings in this case to see if such oral motion could be found, but no oral motion was found based on such quick review. The Court is forced, therefore, to consider Plaintiff's representations to be true regarding their motion and the Court's ruling.

Reed.  First, the evidence of the practice of other contractors on the same worksite at which Malone's and Mr. Reed were working, at or near the same time they were working, is not evidence of "a crime, wrong, or other act" used to "prove a person's character in order to show that on a particular occasion the person acted in accordance with that character."  Fed. R. Evid. 404(b)(1). Rather, such evidence was relevant to show whether Malone's acted in accordance with standard industry practices and procedures as interpreted and followed by other contractors doing similar work at the same worksite, in the course of the same project, and under the alleged control and/or direction of the same project manager and supervisor, Gilbert.

Second, assuming *arguendo* that such evidence was evidence of "other acts" which might otherwise be prohibited under Rule 404(b)(1), as recognized by Plaintiff, Rule 404(b) prohibits such evidence *unless* it is admissible for another purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  In this case, evidence of the acts of other contractors was otherwise admissible as tending to show that Gilbert had knowledge of the practices of other contractors at the worksite regarding what, if any, safety measures were taken when persons were working over other persons at the Simmons Foods worksite.  Such knowledge would be relevant as tending to show that Gilbert may have been negligent in performing its duties to supervise and manage the Simmons Foods construction project to avoid injuries that might be caused by a lack of adequate preventative safety measures.  Plaintiff argues that there was no suggestion by Malone's that the evidence was being used for this purpose.  Again, assuming that no such suggestion was made, the Court is nevertheless not bound by any recitation of purpose by the parties to a case when making a determination as to whether evidence is relevant and admissible.  If that were true, the Court could be forced, by virtue

of poor lawyering in any given case, to admit inadmissible evidence, or to exclude admissible evidence.  The Court determined that evidence of the acts of other contractors at the Simmons Foods worksite during the course of the same construction project was admissible, and persists in that finding, based on the reasoning set forth above.  No new trial is warranted on this basis.

### E.     Failure to Instruct on Lack of Negligence of Simmons Foods

Plaintiff argues that the Court erred in failing to give an instruction, proffered by Plaintiff, that "as a matter of law, Simmons Foods, Inc. ("Simmons Foods") was not negligent in the occurrence." (Doc. 64-7).  The issue of Simmons Foods' negligence was previously litigated, and the District Court found that Simmons Foods was not negligent in relation to the accident. *Reed v. Malone's Mechanical, Inc.*, No. 09-CV-02061 at Doc. 75 (W.D. Ark. 2010). Therefore, the Court ruled prior to trial that "although presentation of evidence regarding Simmons Foods' involvement in the circumstances surrounding the occurrence will undoubtedly be necessary to some extent, the parties are collaterally estopped from presenting evidence or argument implicating that Simmons Foods was or may have been negligent in relation to the occurrence at issue." (Doc. 55, p. 4).

The parties were, therefore, prevented from presenting evidence or argument as to the negligence of Simmons Foods.  The negligence of Simmons Foods was not at issue in this case. Plaintiff's Motion for New Trial acknowledges, "Defendants did not contend at trial that Simmons was negligent." (Doc. 65, p. 8).  Therefore, a jury instruction stating that Simmons Foods was not negligent was unnecessary and, without further explanation as to why Simmons Foods was not negligent or why the instruction was being given, would have potentially and unnecessarily confused the jury.

Plaintiff argues that, because the Court did not give his proffered instruction regarding the non-negligence of Simmons Foods, "the jury could have easily concluded that Simmons was negligent and completely responsible for the injuries to Michael Reed, thus resulting in the jury's conclusion that there was no negligence on the part of Malone's Mechanical, Inc." *Id.* Plaintiff concludes that, under the circumstances, failure to give the proffered instruction resulted in prejudice to himself and should result in a new trial.

The jury was instructed as to the three essential elements that Plaintiff had to prove in order to recover on his negligence claim: (1) that he sustained damages, (2) that Malone's was negligent, and (3) that such negligence was a proximate cause of Mr. Reed's damages. The jury was also instructed as to what they needed to consider or find "[i]n determining whether Michael Reed, Malone's Mechanical, or Gilbert Project Services were negligent." The jury was not, at any point, instructed to consider whether Simmons Foods was negligent. Based on the jury's finding that Malone's was not negligent, the Court may only infer that the jury did not find that Plaintiff satisfied his burden of proof on the three essential elements as instructed by the Court. *Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1022-23 (8th Cir. 2008) ("Absent evidence to the contrary we presume the jury followed the instructions it was given."). In considering those three elements, the jury was not required to consider the negligence of any other party, and the Court cannot and will not speculate that it must have done so in reaching a verdict. Furthermore, any such speculation cannot be the basis for a finding of prejudicial error warranting a new trial. *Id.* ("Mere speculation that a jury verdict may have been based on the jury's own misunderstanding of the law, even though properly instructed, is an insufficient basis on which to upset a jury verdict.").

**F.     Jury Verdict and Weight of the Evidence**

In deciding whether to grant a motion for a new trial, the "key question" is "whether a new trial is necessary to prevent a miscarriage of justice." *Maxfield v. Cintas Corp.*, 563 F.3d 691, 694 (8th Cir. 2009). "A new trial should be granted only if the evidence weighs heavily against the verdict." *Id.*

Plaintiff argues that "[g]iven that OSHA Regulations presented to the Court require taking some action to protect workers below, 29 CFR 1926, it is against the great weight of the evidence for the jury to find no negligence on the part of Malone's Mechanical." (Doc. 65, pp. 8-9). First, as discussed at length above, the Court remains unconvinced that any OSHA regulation presented to the Court would apply to Malone's employees in this action insofar as necessitating that they take measures to prevent the accidental falling of an object from outside the scissor lift onto a person working below. Nevertheless, the jury was allowed to consider whether Malone's may have violated 29 C.F.R. § 1926.501. Second, assuming that any regulation would be applicable to require that Malone's take some safety precaution that it failed to take, the jury was correctly instructed, using language taken from Arkansas Model Instruction 601, that a violation of a regulation, "*although not necessarily negligence*, is evidence of negligence to be considered by you along with all the other facts and circumstances in the case."

Therefore, the jury was entitled to find that the OSHA regulation regarding falling-object protection did not apply to Malone's in the situation presented by this case and/or to find that the regulation was violated but that Malone's was otherwise not negligent in the incident. The jury was properly instructed as to the elements Plaintiff had to prove on his negligence claim, and the jury found against Plaintiff. While it is clear from the evidence presented that there was an accident in this case, a reasonable jury could find that Malone's was not negligent under the facts and law of this

case.  As the jury was instructed, using language from Arkansas Model Instruction 602, "[t[he fact that an accident occurred is not, of itself, evidence of negligence or fault on the part of anyone." Whatever the reason for the jury's verdict, the Court cannot find that the verdict was against the great weight of the evidence, and the Court finds that no miscarriage of justice will result from denying Plaintiff's Motion for a New Trial.

### G.    Allowing Jury to Consider Negligence of Gilbert Project Services

As his final point, Plaintiff argues that the jury should not have been permitted to consider any possible negligence of Gilbert in this case.  Plaintiff argues that he moved for judgment as a matter of law as to Malone's third-party claim against Gilbert, but "the Court held that Plaintiff did not have standing to ask for judgment as a matter of law."  (Doc. 65, pp. 9-10).  Plaintiff then argues that "the jury may have determined that Gilbert Project Services was solely at fault in this matter," implying that such speculated determination may have resulted in the jury's finding of no negligence on the part of Malone's.

First, as a point of clarification, the Court did not hold that Plaintiff lacked standing to ask for judgment as a matter of law.[11]  The Court did question whether Plaintiff had standing to move on behalf of Gilbert. However, the Court denied Plaintiff's motion for judgment as a matter of law on the basis that sufficient evidence had been presented to allow the issue of Gilbert's negligence to go to the jury.  After the Court made its ruling, Plaintiff's counsel inquired as to whether he still

---

[11] Unfortunately, again since no party ordered a full transcript of the proceedings in this case, the Court cannot cite to a specific page or line in the transcript, nor did the Court have the benefit of easily referencing a typewritten transcript on the record.  However, because the Court was reluctant to rely solely on Plaintiff's counsel's memory of the proceedings as a substitute for any official record, the Court listened to a playback of the audio recording of the relevant portions of the proceedings.

needed to address the standing issue, since the motion had been denied on other grounds, and the Court said no.

Second, Plaintiff again speculates as to the reason underlying the jury's verdict in this case and surmises that the jury's consideration of Gilbert's negligence may have caused the jury to find that Malone's was not negligent. Again, the jury was properly instructed on the negligence of the parties, and the Court will not overturn the verdict based on speculation.

Third, the Court previously set forth, at length, its reasons for allowing Gilbert's negligence to potentially be apportioned in this action, and will not discuss those reasons again herein, but stands by its earlier Order. (Doc. 15). However, even assuming *arguendo* that the Court erred in making the ruling that the jury should be able to apportion fault to Gilbert, because the jury found that Malone's was not negligent, the issue is moot because the jury never even reached the issue of whether Gilbert's was negligent to any degree. And, it does not follow that the jury's finding that Malone's was not negligent must have been the result of consideration of Gilbert's alleged negligence.[12] No miscarriage of justice will result in denying Plaintiff's Motion for a New Trial on this basis.

## III.   Conclusions

Based on the reasoning set forth above, the Court finds that no new trial is warranted or necessary in this case so as to prevent a miscarriage of justice.

---

[12] The Court also notes that, although A.C.A. § 15-55-202 was declared by the Arkansas Supreme Court to be unconstitutional in *Johnson v. Rockwell Automation, Inc.*, 2009 Ark. 241 (Ark. 2009), the *Rockwell* opinion appears to have left open the possibility that a defendant to a lawsuit could continue to "point to the empty chair" and argue the negligence of a non-party as evidence that the defendant was not at fault. *Rockwell*, 2009 Ark. at 8 ("While respondents argued in oral argument that a defendant has always been able to 'point to the empty chair,' the 'phantom defendant' established by section 16-55-202 *is different*." (emphasis added)).

IT IS THEREFORE ORDERED that Plaintiff's Motion for New Trial (Doc. 64) is DENIED as to all issues raised.

IT IS SO ORDERED this 14th day of December, 2012.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE